Matter of Citibank, N.A. v N/A (2024 NY Slip Op 05020)

Matter of Citibank, N.A. v N/A

2024 NY Slip Op 05020

Decided on October 10, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: October 10, 2024

Before: Manzanet-Daniels, J.P., Friedman, Kapnick, Gesmer, Rosado, JJ. 

Index No. 652233/22 Appeal No. 2392 Case No. 2023-1432 

[*1]In the Matter of Citibank, N.A., Petitioner,
v
N/A, Respondent.

OWS Administration, LLC, etc., et al., Appellants,
v
Icon Brand Holdings LLC, et al., Respondents.

Cadwalader, Wickersham & Taft LLP, New York (Michael E. Petrella of counsel), for appellants.
Ropes & Gray LLP, New York and Ropes & Gray LLP, Boston, MA (Daniel V. McCaughey of the bar of the Commonwealth of Massachusetts, admitted pro hac vice, of counsel), for BOF Holding VI, LLC, respondent.
Meister Seelig & Fein PLLC, New York (Milton Otto of counsel), for Icon Brand Holdings LLC, Icon DE Intermediate Holdings LLC, Icon DE Holdings LLC and Icon NY Holdings LLC, respondents.

Order, Supreme Court, New York County (Andrew Borrok, J.), entered on or about February 27, 2023, which denied the motion for summary judgment of appellants OWS Administration LLC, the controlling class representative (CCR), and granted the cross-motion for summary judgment of respondents Icon Brand Holdings LLC (Brand Holdings II), Icon DE Intermediate Holdings LLC, Icon DE Holdings LLC, and Icon NY Holdings LLC (collectively, the co-issuers), unanimously modified, on the law, to deny the cross-motion, and otherwise affirmed, without costs.
In this article 77 proceeding, petitioner trustee Citibank, N.A. seeks direction with regard to the correct interpretation of an indenture, which is one of the agreements governing the securitization underlying this appeal. The appeal concerns mainly section 4.1(h) of the indenture, which concerns the provision of financial statements of the manager, nonparty Inconix Brand Group, to the note holders. As relevant here, section 4.1(h) states that the manager, Iconix Brand Group, "on behalf of Brand Holdings II shall provide" certain financial statements to various parties, including the trustee.
In June 2021, Iconix Brand Group announced that it was being acquired and would merge with another entity and become a privately held company; that transaction closed in August 2021. At the close of the third quarter in November 2021, Iconix, in its role as manager, had not provided on behalf of Brand Holdings II the financials called for in section 4.1(h). On November 8, 2021, the trustee contacted Iconix Brand Group to inquire about the failure to provide the financials; in response, Iconix Brand Group stated that, because it was no longer a public company, it no longer was obliged to provide the financials identified in 4.1(h). On that same date, the trustee responded, stating that the indenture continued to require this information.
As a result, on April 4, 2022, at the direction of the CCR and another administrator of the trust, the trustee sent a notice of event of default to Iconix Brand Group, stating that a default had occurred as a result of its failure to provide the relevant financial statements. Later that month, the trustee sent a notice to all noteholders stating that, in light of the disagreements over the occurrence of the event of default, it would not make further distributions but would hold them in escrow. The trustee then commenced this article 77 proceeding, seeking instruction on whether an event of default had occurred and was continuing under the indenture, and whether principal funds were required to be distributed to the noteholders sequentially or pari passu to the classes within a series of notes having the same alphabetical designation.
On its motion, the CCR argues that an event of default occurred, because the financials required by 4.1(h) had not been provided. The CCR argues that the relevant language in section 4.1(h) — "The Manager [Iconix] on behalf of Brand Holdings II shall [*2]provide . . ." clearly puts the obligation on Brand Holdings II, and that Iconix was only acting as an agent for a disclosed principal. On their cross-motion, the co-issuers argue that no event of default has occurred because 4.1(h) places the obligation to provide the financials not on Brand Holdings II, but on the manager, Iconix. In support of their argument, the co-issuers note that in other subsections of the agreement, different language was used. For instance, section 4.1(e) requires that "Brand Holdings II shall furnish, or cause the Manager to furnish . . ." certain notices. Section 4.1(d) states that "Brand Holdings II shall deliver, or cause the Manager to deliver . . ." certain reports. This use of different language, argued the co-issuers, meant that 4.1(h) was a duty of the manager, and thus the breach did not trigger an event of default.
It cannot be determined on this motion whether the failure to provide financial statements constituted an event of default, as section 4.1(h) of the indenture is ambiguous as to which entity has the obligation to provide the financial statements (Universal Am. Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa., 25 NY3d 675, 680 [2015]). Although other subsections of section 4.1 use unequivocal language to state that Brand Holdings II "shall" or "will" "furnish or cause the Manager to furnish" particular documents, the language of 4.1(h) lacks the same unequivocal phrasing showing that the obligation belongs to Brand Holdings II (see Platek v Town of Hamburg, 24 NY3d 688, 696 [2015]). This difference in phrasing — in particular the lack of any obligatory language directed at Brand Holdings II in 4.1(h) — suggests that it is possible that the indenture intended to make the manager, and not Brand Holdings II, the obligated party. Moreover, contrary to the CCR's assertion, the co-issuers' reading of the provision did not render the agreement absurd or unreasonable (cf. Keller-Goldman v Goldman, 149 AD3d 422, 426 [1st Dept 2017]).
The arguments raised by respondent BOF Holdings IV in its separate brief for affirmance are unavailing. Contrary to its contention, if the cure period ended without a cure, the event of default became "continuing" (Deka Immobilien Inv. GmbH v Lexington Ave. Hotel, L.P., 196 AD3d 424, 425 [1st Dept 2021]). Nor, should the CCR prevail, would it be without a remedy under the indenture. It has already sought acceleration of the notes, which is an express remedy upon an event of default. Moreover, should there be an event of default, the CCR may also be entitled to pari passu distributions.
The Decision and Order of this Court entered herein on May 30, 2024 is hereby recalled and vacated (see M-2024-03135, M-2024-03152 decided simultaneously herewith).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 10, 2024